IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

P & K PROPERTY, LLC,

    Plaintiff,

v.

HARTFORD CASUALTY INSURANCE COMPANY,

    Defendant.

No. C 11-06606 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Currently before the Court is defendant Hartford Casualty Insurance Company's ("Hartford") motion for summary judgment. Plaintiff P & K Property, LLC ("PKP") has filed an opposition, to which Hartford has replied. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and therefore VACATES the hearing currently scheduled for February 15, 2013. Having considered the parties' arguments, the Court hereby GRANTS defendant's motion for summary judgment, for the reasons set forth below.

**BACKGROUND**

On May 16, 2008, a fire destroyed PKP's warehouse located at 801 State Access Road, Novato, California. ("State Access Property"). Yount Decl. ¶ 4 (Dkt. 32-3). Both the warehouse and the personal property contained therein were insured.

The warehouse contained construction equipment and other personal property owned by West Bay Builders, Inc. ("West Bay"). Evid. in Supp. of Hartford's Mot. for Summ. Judg., Ex. 18 (hereinafter "Evid. Ex."), Thompson 8/3/2012 Depo. at 19. West Bay was insured under a policy by Travelers Insurance Company. Yount Dec. ¶ 11; Evid. Ex. 7. Travelers paid West Bay for its personal

property loss and defendant Hartford paid PKP the actual cash value of the warehouse, and the two insurers split the expense for debris removal. Yount Decl. ¶¶ 6, 11; Evid. Exs. 4, 7.

PKP's State Access Property warehouse was insured pursuant to policy 57 SBA BZ4446. Yount Decl. ¶ 3; Evid. Ex. 1, Dkt. 32-4 (hereinafter "Policy"). In the event of physical loss or damage, the Policy allowed the insured to recover both the "actual cash value" and "replacement cost" of the loss or damage up to $228,900, minus a $1,000 deductible. Yount Decl. ¶ 3; Policy at 34, 65-66. After receiving a claim from PKP, Hartford retained Chatfelter Appraisal to determine the actual cash value of the warehouse as it existed just before the fire. Yount Decl. ¶ 4, 5. The appraiser valued the warehouse at $110,000, and on August 4, 2008, Hartford issued a check to PKP in the amount of $109,000 (subtracting the $1,000 deductible). Yount Decl. ¶ 5,6; Evid. Ex.'s 2, 3. There is no evidence in the record that PKP disputed the appraisal or the payment.

Over the next eighteen months, the parties traded correspondence regarding PKP's intention to replace or repair the State Access Property. *See*, Evid. Ex.'s 3-14. In sum, PKP repeatedly insisted that it intended to replace the Property, and Hartford repeatedly reminded PKP that it would cover the replacement cost as long as it was done "as soon as reasonably possible." *See id.*; Evid. Ex. 12.

On February 18, 2010, PKP's attorney informed Hartford that changes in local zoning law prohibited PKP from replacing the warehouse on the State Access Property, and that in the alternative, PKP had "replaced the warehouse by entering into a lease with an option to purchase a warehouse at 320 Deer Island Lane in Novato." ("Deer Island Property") Yount Decl. ¶ 21; Evid. Ex. 15. The Deer Island Property lease listed "Sundt Construction" as the lessor and "W.B.B. Construction, Inc." as the lessee. Evid. Ex. 16 (hereinafter "lease" or "Deer Island lease"). Paul Thompson, a principal and owner of PKP, is also an officer, director, and shareholder in both W.B.B. Construction and West Bay. Evid. Ex. 18, Thompson 8/13/2012 Depo. at 63. The lease was not entered into by PKP or any other entity insured under the Policy. *See id*. West Bay, not W.B.B. Construction, is the only entity that ever made lease payments on the Deer Island lease. Evid. Ex. 20, Thompson 11/16/2012 Depo. at 78. Hartford reviewed the lease and on March 17, 2010, declined to issue replacement cost payment to cover the Deer

2

Island Property because W.B.B. Construction was not insured under the Policy and "entering into a lease does not constitute a replacement of the property as required by the replacement cost provisions of the policy." Evid. Ex. 17.

This lawsuit followed. On August 17, 2011, PKP filed suit in Marin County Superior Court alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief based on Hartford's refusal to provide replacement coverage. Compl. ¶¶ 6, 10, 11, 15, 16, 21. On December 22, 2011, Hartford removed the action to this Court.

PKP's complaint states that Hartford has "refused and continue[s] to refuse to pay and/or reimburse [PKP] for the loss adjustment, mitigation, investigation and other costs and expenses incurred as a result of the damages." *Id*. ¶ 10. The only provision of the Policy referenced in the PKP's complaint, which consists mainly of boilerplate allegations, is the "replacement coverage" provision. *Id*. ¶ 6. On December 3, 2012, Hartford filed the instant motion for summary judgment asserting that the only disputed issue with respect to PKP's three causes of action – whether Hartford properly declined to pay replacement costs to PKP on a third-party lease with an option to buy – is solely a question of law.

**LEGAL STANDARD**

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *See T.W. Elec. Service, Inc. v. Pacific Elec.*

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1. Disputed Issues**

PKP asserts that there are three disputed issues that prevent the Court from granting Hartford's motion for summary judgment: (1) the actual cash value of the insured property; (2) whether PKP replaced the insured building within a reasonable time; and (3) whether PKP replaced the State Access Property with a functionally equivalent warehouse. The Court addresses each in turn.

**a. Actual cash value.**

The Court is troubled by PKP's assertion, on summary judgment, of an actual cash value claim nowhere pled in its complaint and nowhere asserted during discovery, case management conferences, or anywhere in the case. In its opposition to Hartford's motion, PKP submits a declaration – to which Hartford objects, *see* Dkt. 40 -- from Paul Thompson, a principal and owner of PKP. Thompson Decl. ¶ 1. Based on his "experience in real property purchase and development" and "in the construction industry," Thompson asserts that the "assessed cash value" of the State Access Property is $1,500,000 and the 10,250 square foot warehouse located thereon is worth $750,000. Thompson Decl. ¶ 4. PKP

4

presents these figures to contradict the appraisal done by Hartford, which valued the Property at $110,000. Evid. Ex. 2. The Court rejects this self-serving declaration and PKP's attempt to add a new breach of contract claim for failure to pay actual cash value.

First, the Ninth Circuit has said, "summary judgment is not a procedural second chance to flesh out inadequate pleading." *Wasco Prods. Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *see also, Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183981,*10 (N.D. Cal. Sept. 9, 2008) (rejecting new claim on summary judgment where "nothing either directly or inferentially" in the complaint gave defendants notice of the claim).

Here, PKP's complaint refers only to "replacement coverage" and incorporates that reference into its three causes of action. Compl. ¶¶ 6, 10, 11, 15, 16, 21. Moreover, throughout the case, PKP has repeatedly stated that the basis for its claims was that "defendant denied coverage for a replacement property at a different location . . ." *See* Case Mgmt. Statement, Dkts. 23, 29. The parties have conducted discovery and taken depositions only on this basis. *See* Smith Decl., Ex.'s 1, 2, 3, 4, 5. PKP's initial disclosures reference no facts, witnesses, or damages suggesting a dispute about actual cash value and even states that damages here are, "$128,900. Policy Limit Replacement Cost: $228,900 less payment and deductable [sic]." *See* Dkt. 13. In other words, PKP's damages analysis assumed the validity of the $109,000 actual cash value payment Hartford made to PKP on August 4, 2008. In addition, PKP's interrogatory responses make no mention of any actual cash value dispute. *See* Smith Decl., Ex.'s 1, 2, 3. Instead, PKP's responses repeatedly define the scope of the dispute as refusal to pay replacement costs "contrary to the insurance agreement." *See* Smith Decl., Ex. 2, PKP's Resp. to Special Interrog. 1, 3, 5, 7, 9, 10, 12-14, 16-20, 22. Moreover, the same Paul Thompson who now purports to have appraised the cash value of the State Access Property earlier testified as a 30(b)(6) deponent, on two separate occasions, where he acknowledged receipt of Hartford's actual cash value payment and did not dispute the valuation or payment. *See* Smith Decl., Ex. 4,Thompson 8/3/2012 Depo. at 66-67; Ex. 5, Thompson 11/16/2012 Depo. at 85.

5

1    If PKP disputed the actual cash value payment Hartford issued, the proper procedure would have
2    been to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). To allow amendment
3    through the backdoor on an opposition to a summary judgment motion would plainly prejudice Hartford.
4    Hartford has had no prior notice whatsoever of this claim. Moreover, it would violate Fed. R. Civ. P.
5    37(c)(1), which provides that where a party fails to produce information or identify a witness as required
6    by Fed. R. Civ. P. 26 (governing initial disclosures and interrogatories), "the party is not allowed to use
7    that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless failure was
8    substantially justified or is harmless." Here PKP's attempt is not harmless and it is not justified.

9    Second, even if the actual cash value claim had been properly raised in the complaint or through
10   discovery, it would have been barred by the plain language of the Policy itself. The Policy states, "[n]o
11   one may bring a legal action against [Hartford] unless . . . [t]he action is brought within 2 years after the
12   date on which the direct physical loss or physical damage occurred." Policy at 65. PKP filed this
13   lawsuit on August 17, 2011. Hartford paid PKP actual cash value on August 4, 2008. Evid. Ex. 3.
14   Thus, the limitations period for challenging the actual cash value determination had already run by the
15   time PKP filed this lawsuit.[1] In addition, the Policy outlines an appraisal dispute procedure, where each
16   party chooses an impartial appraiser, and differences between the two appraisers are submitted to a
17   mutually chosen umpire. *Id*. Nowhere in the record is there any evidence that PKP followed the
18   appraisal dispute procedure required by the contract. The Court's consideration now of PKP's actual
19   value dispute would violate the terms of the Policy.

20   Accordingly, there is no genuine dispute of fact regarding the actual cash value paid to PKP for
21   the State Access Property. The Court sustains Hartford's objections to the Thompson Declaration (Dkt.
22   34-2) and to any claim challenging the valuation of the State Access Property's actual cash value.

---

[1] As Hartford notes in its reply, the limitations period on the replacement cost coverage claim – which is the claim actually litigated in this lawsuit – was tolled by operation of law because the adjustment of that claim continued after the payment of actual cash value on August 4, 2008. See Yount Dec., Ex. 17 (3/17/10 letter from Hartford to plaintiff's counsel); *see also Marselis v. Allstate Inc. Co.,* 1212 Cal.App.4th 122, 126 (2004).

### b. Whether PKP replaced the insured building within a reasonable time.

PKP asserts that whether it acted within a reasonable time in finding a replacement property is a disputed material fact for the jury to decide. PKP includes two allegedly disputed issues is this timeliness concern: (1) whether the nearly five years between the 2008 fire and date when the option to purchase under the lease could be exercised is "reasonable" replacement time, as the Policy uses that term; and (2) whether the Policy requires that replacement or construction be completed *prior* to Hartford issuing replacement cost payment.

The Court finds, however, that there is no issue of *material* fact with respect to either issue, since neither issue is material to Hartford's core contention. Hartford's summary judgement position is that *even assuming* the lease was validly assigned to PKP and *even assuming* a 56-month replacement delay is reasonable under the Policy, a lease with an option to purchase is not a replacement. Whether a lease with a right to purchase qualifies as a replacement as that term is used in the Policy is a question of contract interpretation. Under California law, for summary judgment purposes the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law appropriate for disposition only by the court. *Butler v. Clarendon Am. Ins. Co.*, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007). If the Deer Island lease is not a "replacement" covered by the Policy, then summary judgment is appropriate for Hartford because any remaining hypothetically disputed facts are immaterial to the core legal dispute – the Policy's scope. These legal questions are addressed at greater length later in this Order.

It is true that the Policy requires that the replacement be "made as soon as reasonably possible after the physical loss or physical damage." Policy at 66. The January 25, 2010 lease entered into by W.B.B. Construction, Inc. and Sundt Construction, neither of which is a party to the Policy, and allegedly assigned to PKP in May of 2012, was a five-year lease with an option to purchase the property after three years. Evid. Ex. 16, Ex. 21. The earliest W.B.B. Construction or PKP could have purchased the Deer Island Property was three years after January 25, 2010, or January 25, 2013. In its motion

7

papers, Hartford argues that such an option to purchase, which would not materialize until 56 months after the initial property loss, does not constitute a reasonable time as contemplated by the Policy. However, this is not the entirety of Hartford's position nor is it material to the core legal, non-factual dispute, at the heart of Hartford's summary judgment motion.

In any event, there are not very many fairly disputable facts about the timing. At his August 3, 2012, deposition, PKP's principal, Paul Thompson, testified unequivocally that a business decision had been made to cease leasing the Deer Island Property and *not* to exercise the purchase option. He was explicitly asked whether there had been "any modifications" to the lease, and he made no mention of the supposed May 31, 2012 assignment from W.B.B. Construction, Inc. to PKP. Instead he testified that PKP had no plans to "lease or buy the building." Evid. Ex. 18, Thompson 8/3/2012 Depo. at 62-63. At a second session of his deposition, in November, 2012, Thompson testified that the assignment was actually created one or two months after a June 6, 2012 mediation session. Evid. Ex. 20, Thompson 11/16/2012 Depo. at 89-92. If Thomson testified truthfully at both sessions of his deposition, the lease was signed and backdated sometime in August, after the first deposition session and after PKP had decided not to exercise the option.[2]

Given this evidence, there is no dispute that neither PKP, W.B.B. Construction, nor West Bay ever intended to exercise the option, and that the assignment was created *after* that decision was made and *after* the parties terminated the lease.

PKP's opposition also alludes to a dispute with respect to the timing of replacement cost payments as contemplated by the Policy. PKP asserts that Hartford initially did not advise that it would pay replacement costs only after PKP expended the funds to replace or repair the property. Dkt. 34 at 6. According to PKP, issuing replacement payment only after PKP has already fronted the funds would be inequitable because it would force PKP to "expend the full $1.2M to reconstruct State Access, before

---

[2] At his November 16, 2012 deposition, Thompson testified that he created the assignment because he thought Hartford's refusal to consider the third-party lease a replacement "was kind of a BS technicality" which the assignment would "resolve." Evid. Ex. 20, Thompson 11/16/2012 Depo. at 92. Thus it appears the assignment was created and backdated to May 31, 2012, in order to undermine Hartford's litigation position.

8

1 Hartford would release <u>any</u> [of] the remaining $119,999 remaining on the policy for replacement costs."
2 Dkt. 34 at 6-7 (emphasis in original). Here, too, there is no material dispute of fact. The Policy
3 explicitly provides that "[Hartford] will not pay on a replacement cost basis for any physical loss or
4 physical damage . . . [u]ntil the physically lost or physically damaged property is actually repaired or
5 replaced . . ." Policy at 66. There is no evidence in the record that Hartford ever asserted otherwise.
6 Moreover, California law explicitly approves of this type of policy provision. *See* Cal. Ins. Code
7 §2051.5; *Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 492 (2011) ("section 2051.5 expressly
8 acknowledges that a policy may condition the recovery of replacement costs on an insured replacing the
9 dwelling").

### c. Whether the properties are functional equivalents.

PKP also asserts that there is some dispute as to whether the Deer Island Property was a warehouse functionally equivalent to the State Access Property warehouse. Dkt. 34 at 1. PKP notes that the dictionary definition of replace includes the "notion of substituting for an original item another item which serves the same function as the original but is different in nature from the original." *Id.* at 8. Thus, according to PKP, the Deer Island Property is a replacement as the Policy uses that term even though it is at a different location, because it serves the same function as the State Access Property. Again, there is no material dispute of fact here. Nowhere does Hartford dispute that the two warehouses perform the same function. Hartford's dispute is with the legal instrument PKP asserts is a replacement – a lease with an option to purchase – not with whether the Deer Island Property is functionally the same as the State Access Property even though it is at a different location. Having found no material factual disputes, it is to that legal dispute the Court now turns.

### 2. The Scope of the Policy's Replacement Cost Provision

The core legal question before the Court is whether the Policy's replacement provision allows a lease-with-an-option-to-purchase to "replace" a building owned in fee. The Court assumes facts in

9

the light most favorable to PKP: that the timing of entering into the lease and the eventual purchase option are reasonable and that the new property is functionally the same as the destroyed property. Even assuming these facts, the Court concludes that a lease is not a replacement under the Policy.

The Court begins with the plain language of the Policy. The relevant replacement cost provision provides that in the event of physical loss or physical damage covered by this Policy:

> d.     We will determine the value of Covered Property as follows:
>
> (1)     At replacement cost (without deduction for depreciation) . . .
> (a)     You may make a claim for physical loss or physical damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have physical loss or physical damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the physical loss or physical damage.
> (b)     We will not pay on a replacement cost basis for any physical loss or physical damage:
> (i)     Until the physically lost or physically damaged property is actually repaired or replaced; and
> (ii)     Unless the repairs or replacement are made as soon as reasonably possible after the physical loss or physical damage.
> (c)     We will not pay more for physical loss or physical damage on a replacement cost basis than the least of:
> (i)     The cost to replace, on the same premises, the physically lost or physically damaged property with other property of comparable material and quality which is used for the same purpose; or
> (ii)     The amount you actually spend that is necessary to repair or replace the physically lost or physically damaged property . . .

Policy at 65-66. The lease-with-an-option-to-purchase fails to qualify as a replacement for two reasons. First, PKP was not a party to the lease. Second, even if PKP were a party to the lease, a lease does not endow the lessee with the same fee simple ownership interests PKP had in the State Access Property. Therefore, because the lease is not comparable to the original "property," the lease cannot replace that property, as the Policy uses that term.

The Deer Island Property lease lists "Sundt Construction" as the lessor and "W.B.B. Construction" as the lessee. Evid. Ex. 16. The lease is signed by Paul Thompson as "President" of

10

W.B.B. Construction, Inc. *Id.* Although Thompson is an officer, director, and shareholder in both W.B.B. Construction and PKP, PKP itself is not a party to the lease. Moreover, the only evidence is that West Bay, not PKP or W.B.B. Construction, made lease payments. Evid. Ex. 20, Thompson 11/16/2012 Depo. at 78. The policy language is unequivocal: Hartford will pay replacement costs for "the amount *you* actually spend that is necessary to repair or replace the physically lost or physically damaged property." Policy at 65 (emphasis added). The Policy defines "you" and "your" as "the Named Insured shown in the Declaration." *Id*. at 45. W.B.B. Construction and West Bay are not included as Named Insureds. *Id*. at 7. Even if a lease qualifies as a replacement, the Hartford Policy did not insure W.B.B. construction. Thus, the threshold condition for recovery – coverage under the policy – has not been met.

To get around this fatal defect, PKP's principal Paul Thompson apparently created and backdated an assignment of the lease from W.B.B. Construction to PKP. PKP contends, with no evidentiary support, "[t]hough the Deer Island Lease with Purchase Option was executed by W.B.B. Construction, it was always the intent that the lease and ownership of the Deer Island [sic] be by PKP." Dkt. 34 at 3. However, the lease at issue contains a provision that states that there can be no valid assignment unless the lessor consents in writing. Evid. Ex. 16 at 34. Noticeably absent from the purported assignment between W.B.B. Construction and PKP is any consent from the lessor, Sundt Construction, Inc. *See* Evid. Ex. 21. The "CONSENT OF LANDLORD" section contains no signature. *Id.* California courts have long upheld such provisions and it is settled under California law that a lessor may terminate a lease where a lessee assigns the lease to a third-party in violation of a prohibition on assignment. *See People v. Klopstock*, 24 Cal.2d 897, 901 (1944).

Moreover, as noted above, Thompson *admitted* that the lease between W.B.B. Construction and Sundt Construction had been terminated *prior* to the creation and backdating of the assignment. *See* Evid. Ex. 20, Thompson 11/16/2012 Depo. at 78 ("Q: So as of June or July 2012, no business entity that you're associated with was any longer leasing the Deer Island property, is that correct? A: Correct."); *see also id.* at 91 (the assignment was created "one or two months" after a June 6, 2012 mediation

11

session). Thus, even if the landlord, Sundt Construction, Inc., had consented to or failed to challenge the assignment, there can be no valid assignment of a non-existent lease.

PKP non-participation in the lease, alone, is fatal. In addition, even assuming, contrary to the evidence, that PKP was a party to a now terminated lease, a lease cannot replace the property at issue because a lease is not legally comparable to the "property" envisioned by the Policy. Hartford contracted with PKP to insure a property PKP held in fee simple. In exchange for an annual $24,023 premium, Hartford contracted to cover the risk of loss or damage to several of PKP's properties, including State Access Property. Policy at 21. In particular, Hartford provided PKP with "Lessors Risk Only" coverage on the basis that PKP was the "Building Owner." *Id.* at 34. In other words, in providing "Lessor" coverage, the Policy presupposed that PKP was an owner of the property capable of leasing it to others. Thus, it is reasonable to infer that where the Policy covers efforts to "rebuild or replace the property with other property of like kind and quality," the replacement property must be owned in fee simple as was the original property. Policy at 65.

Any interpretation to the contrary would do violence to the underlying contractual assumption; that Hartford contracted to insure a "Lessor" who owned the subject property in fee simple. This is because under California law, leasehold and ownership constitute different, non-equivalent property rights. A lease manifests a right to temporarily use a location subject to the owner's rights, and is considered personalty under California law. *See Pacific Southwest Realty Co. v. County of Los Angeles*, 1 Cal.4th 155, 162-63 (1991) ("[T]here is no question that as a nonfreehold estate [a lease] is a different species of interest from a freehold estate in fee simple. Any other conclusion would be contrary to centuries of English and American common law and its codification, as modified, in our Civil Code."). By contrast, building ownership includes possession of tangible real property that may be held indefinitely, is freely devisable, and is useable for any lawful purpose. *Id.* A lease with an option to purchase is not a tangible ownership interest, it is merely an intangible right. *See In re Merten*, 164 B.R. 641, 643 (Bankr. S.D. Cal. 1994) ("The grant of an option to purchase is a sale of a right to purchase. It creates no such estate as such in the land.") (internal citations omitted). Thus, equating leasehold to

1 property ownership, as PKP desires, is plainly contrary to California law. And the parties do not dispute 2 that California law governs interpretation of the Policy. Where Hartford contracted to permit PKP to 3 "rebuild or replace" damaged property "with other property of like kind and quality," it is reasonable 4 to infer, consistent with California law, that the replacement property must include equivalent fee simple 5 ownership rights as the original, not the diminished property rights associated with a leasehold.

6 Moreover, the plain language of the Policy contemplates reimbursement for what the insured 7 actually spends on physically replacing the property. *See* Policy at 66 ("The amount you actually spend 8 that is necessary to repair or replace the physically lost or physically damaged property."). Under PKP's 9 interpretation, Hartford would make payments indefinitely for an intangible lease, or presumably until 10 the term of the lease expired or the policy limit was paid. The replacement provision contemplates 11 payment only for some tangible replacement, not an intangible lease. This view is consistent with the 12 purpose of replacement cost coverage, as courts have addressed that term. *See, e.g.*, *Conway v. Farmers* 13 *Home Mutual Ins. Co.*, 26 Cal.App.4th 1185, 1190 (1994) ("the purpose of [replacement coverage] is 14 to limit recovery to the amount the insured spent on repair and replacement as yet another measure of 15 the loss liability of the insurer . . . [Replacement coverage] is intended to disallow an insured from 16 recovering, in replacement cost proceeds, any amount other than that actually expended."). Lease 17 payments, by their nature, are prospective. By requiring Hartford to issue prospective lease payments 18 as they come due, PKP's interpretation of the Policy would violate the purpose and plain meaning of 19 a provision meant only to reimburse costs already expended.

20 Having considered the undisputed evidence, the Court finds that the lease fails as a replacement 21 because, as a threshold matter, PKP is not a proper party to the lease. Even if PKP were a party, the 22 Policy requires that the insured have comparable property rights in the replacement as in the original; 23 and a leasehold and fee simple are not comparable property rights under California law. This finding 24 is fatal to PKP's breach of contract claim, which is premised on the allegation that Hartford improperly 25 refused to cover the lease under the replacement costs provision. This finding is also fatal to PKP's 26 breach of the implied covenant of good faith and fair dealing claim. As essential element for such a

cause of action is that coverage be due under the policy at issue. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995); *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1153 (1990). Here PKP has failed to demonstrate that coverage is due. In addition, PKP's action for declaratory relief seeking declaration that coverage is due under the Policy also fails for the same reason.

## CONCLUSION

For the foregoing reasons the Court hereby GRANTS Hartford's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 12 , 2013

SUSAN ILLSTON
United States District Judge